# IN THE COURT OF APPEALS OF IOWA

No. 23-1827
Filed January 24, 2024

**IN THE INTEREST OF J.G.,**
**Minor Child,**

**C.G., Father,**
    Appellant.

_____

    Appeal from the Iowa District Court for Marshall County, Paul G. Crawford, District Associate Judge.

    A father appeals the termination of his parental rights to his daughter. **AFFIRMED.**

    Merrill C. Swartz of Swartz Law Firm, Marshalltown, for appellant father.

    Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

    Mary Cowdrey of Public Defender's Office, Marshalltown, attorney and guardian ad litem for minor child.

    Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

A father, Cesar, appeals the termination of his parental rights to his toddler daughter, J.G. He contends the State did not prove the statutory grounds for termination. Because we agree with the juvenile court that the child cannot be safely returned to the father's custody, we affirm the termination order.

## I. Facts and Prior Proceedings

When J.G. was born in April 2022, she tested positive for methamphetamine and THC, the active ingredient in marijuana. Both Cesar and the child's mother, Maria,[1] admitted regular methamphetamine and marijuana use. Then, because the parents failed to follow a safety plan, the juvenile court removed J.G.—along with her older brother, A.L.—from the parents' custody. The Iowa Department of Health and Human Services placed the children with their maternal grandmother for a few months. The department ended that placement when it learned the grandmother was leaving the children with unapproved relatives and friends.

The department then placed the children with J.G.'s paternal uncle, Angel. That placement also ended when both children tested positive for illegal drugs— A.L. for THC, and J.G. for THC and methamphetamine. The tests resulted in a founded child abuse assessment against Angel. The department next placed the children with A.L.'s paternal aunt, who is considered fictive kin for J.G. They have done well in her care, and she is willing to adopt them.

When the children were removed, the court ordered Cesar to abstain from any non-prescribed "mood-altering substances," undergo a substance-abuse

---

[1] The court also terminated Maria's parental rights. She is not a party in this appeal.

evaluation, provide drug and alcohol screens, participate in mental-health treatment, and take all prescribed medications.

Cesar also faced consequences for assaulting Maria shortly after J.G.'s birth. He was charged with domestic abuse assault by strangulation, interference with official acts, false imprisonment, and a probation violation. He stayed in the county jail until September 2022, when he transferred to a residential jail diversion center. He returned to construction work, where Angel was his supervisor. And Cesar started taking domestic violence education and parenting classes. He had video visitation with J.G. while in jail and began in-person visits at the residential center. He completed a substance-abuse evaluation that diagnosed him with cannabis use disorder and amphetamine-type substance-abuse disorder. The evaluator recommended classes and random drug screens. Cesar also completed a mental-health evaluation and was diagnosed with anxiety and depression, was prescribed medications, and was recommended to continue with therapy sessions.

That December, the juvenile court granted the parents a six-month extension to continue working toward reunification. Cesar tested negative for drugs in January 2023. But that month he also decided to stop taking his anxiety and depression medications and declined to attend therapy. In February, while still in the residential center, he admitted to using methamphetamine. He tested positive for THC and methamphetamine and blamed the relapse on eating a chocolate bar that a friend gave him.

But there were bright spots. The family centered services workers consistently reported that Cesar was an attentive caregiver to J.G. during visitation. He was prepared with essentials and provided all her needed care. In the spring

of 2023, his visitation increased from two visits per week to three. He completed a new substance-abuse evaluation in March and attended three group treatment sessions. And his drug screens were negative.

But, in May, Cesar discharged from the residential center and moved in with Angel despite the children testing positive for drugs in the uncle's care. Cesar also tested positive for methamphetamine again in May. And he admitted to using cocaine and drinking alcohol. The next month, the juvenile court set the case for a joint permanency review and termination-of-parental-rights hearing. The State petitioned for termination of Cesar's rights under Iowa Code section 232.116(1), paragraphs (a), (h), and (*l*) (2023). The court found grounds to terminate his rights under paragraph (h). Cesar appeals.[2]

## II. Discussion

We analyze this termination case in three steps. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). First, we decide whether the State proved any ground for termination under Iowa Code section 232.116(1). Second, we apply the best-interests framework in section 232.116(2). *Id.* Third, if that framework supports the State's petition, we check whether any factors in section 232.116(3) should preclude termination. *Id.* We need not address a step that the parent does not challenge on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

---

[2] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

Cesar raises one issue on appeal: he challenges the juvenile court's conclusion that J.G. could not be returned to his custody at the time of the termination hearing.[3]  He argues there wasn't clear and convincing evidence that his home was not safe or that he could not properly supervise J.G.[4]

We agree with the district court—there was clear and convincing evidence that Cesar could not provide a safe home for J.G. at the time of the termination hearing.  At that hearing, Cesar explained that he was living at his brother Angel's house, which had room for J.G. and where he had stocked necessary supplies for her.  And he identified his brother as a supporter of his sobriety.  But he also

---

[3] To find termination appropriate under paragraph (h), the court must find all the following supported by clear and convincing evidence:

      (1) The child is three years of age or younger.

      (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

      (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

      (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h); *see In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (requiring proof of statutory grounds by clear and convincing evidence).

[4] Our case law offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102 (discussing transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child").  Many cases cite *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992) which quotes section 232.102(4)(a)(2)—then numbered section 232.102(5)(b)—for the proposition that custody should be transferred only if the court finds "the child cannot be protected from some harm which would justify adjudication of the child as a child in need of assistance and an adequate placement is available."  *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016).  But our supreme court often describes that element as the inability to "safely return" children to their parents' care.  *See, e.g.*, *In re T.W.*, No. 20-145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases).  Under either formulation, the State met its burden of proof.

acknowledged that the children were removed from Angel after being exposed to drugs. And he agreed that he tested positive for illegal drugs twice while living with his brother.[5] He also admitted that Angel smokes marijuana but insisted he did not do so in the house. He believed there would not be any safety concern for J.G. if Angel did not use drugs inside the house. He also explained his plan to move out in about three months.

Angel also testified, acknowledging that the children were exposed to drugs in his home but denying that he caused that exposure. Eventually, he admitted he smoked around three times a week when they lived with him and hypothesized that the drug exposure was from his sweat. But that does not explain how J.G. tested positive for methamphetamine. Angel also claimed that he stopped smoking marijuana two months before the termination hearing.

The brothers' casual approach to drug use suggests two things: (1) the home would not be safe for J.G. and (2) Cesar would not exercise appropriate supervision. Cesar's alternative plan was to move to a hotel, but that option too appeared as a dim prospect for J.G.'s safety and wellbeing. Cesar estimated he would need to stay at a hotel for three months to afford a new home for himself and J.G. He testified he could achieve stability in the time it would take the court to file its decision. But the decision is based on the circumstances at the time of the termination hearing. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (defining "at the present time" in section 232.116(1)(h) to mean at the time of the termination hearing). And Cesar's plan was just a plan.

---

[5] Cesar also tested positive for alcohol, but testified he was not told he could not drink. He believed he could stop drinking alcohol though.

In any event, the juvenile court was rightly concerned with Cesar's own sobriety and stability. He tested positive for methamphetamine, cocaine, and alcohol just a few months before the termination hearing. He professed that he would stop drinking alcohol, though he had been prohibited from drinking since the opening of the case. He has been diagnosed with substance-abuse impairments and has not consistently attended treatment. He tested positive for drugs both while he was in a residential facility and while attending treatment. He stopped attending therapy and taking his medications. He testified the prescriptions affected his work and he does not think he needs therapy.

Cesar compares his case to *In re B.W.*, No. 23-0518, 2023 WL 4759462 (Iowa Ct. App. July 26, 2023). In that case, we reversed a termination for a mother who had a five-month period of sobriety. *B.W.*, 2023 WL 4759462, at *3. But in that case, the mother had completed substance-abuse treatment, "'completed most, if not all, of the components' of the case plan," and established a safe household for the children. *Id.* We do not see as much promise, nor as much effective response to services in Cesar's case. Most importantly, he fails to appreciate the lingering danger of drug use that led to J.G.'s removal—first from his custody and then from Angel's home. We find clear and convincing evidence that Cesar cannot safely resume custody of J.G. at the present time. The State proved termination was appropriate under paragraph (h). So we affirm.

**AFFIRMED.**